UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SYLVESTER C. JOHNSON                          CIVIL ACTION

VERSUS                                        NO. 19-11385

ANDREW SAUL, ACTING                           SECTION "T"(2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff, Sylvester C. Johnson, seeks judicial review pursuant to Section 405(g) of

the Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for a period of

disability and disability insurance benefits ("DIB") under Title II of the Act.  42 U.S.C. §

1382c. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b) and Local Rule 73.2E(B).

I.    <u>PROCEDURAL HISTORY</u>

On September 19, 2016, Johnson filed a Title II application for a period of disability

and DIB, alleging a disability onset date of May 5, 2015. (Tr. 309). After his claim was

denied at the agency level, plaintiff requested a hearing before an Administrative Law

Judge ("ALJ"), which was held on June 27, 2018. (Tr. 325–346). Plaintiff appeared in

person and was represented by counsel. <u>Id</u>. The ALJ issued a decision on October 16, 2018,

finding that Johnson was not disabled. (Tr. 306–24). Plaintiff requested review of the ALJ's

decision by the Appeals Council on November 8, 2018, which was denied on April 28,

2019. (Tr. 1–7). Thereafter, the ALJ's decision became the Commissioner's final decision for purposes of this court's review.

Plaintiff filed his complaint in this court on June 27, 2019. Record Doc. No. 1. Johnson timely filed his memorandum of facts and law on October 30, 2019. Record Doc. No. 9. Defendant timely filed his reply memorandum on December 11, 2019, after being granted an extension of time to do so. Record Doc. Nos. 10, 11, 12.

II.    STATEMENT OF THE ISSUES ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.    The Appeals Council erred by failing to consider new and material evidence submitted to it that is dated after the ALJ's decision.

B.    The ALJ erred in failing to provide a rationale for not awarding a closed period of disability and in not awarding a closed period of disability.

Record Doc. No. 9 at pp. 3–6.

III.    ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1.    Johnson met the insured status requirements of the Act through June 30, 2019.

2.    Plaintiff did not engage in substantial gainful activity during the period from his alleged disability onset date of May 5, 2015, through October 16, 2018, the date of the ALJ's decision.

3.    On October 16, 2018, he had the following severe impairments: traumatic brain injury, vertigo and neurocognitive disorder.

4.    On October 16, 2018, plaintiff did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    On October 16, 2018, Johnson had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except that he was unable to climb ladders, ropes, or scaffolds, could frequently balance, occasionally climb ramps and stairs, and occasionally stoop, kneel, crawl, and crouch. In addition, Johnson should avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights. Furthermore, plaintiff was limited to understanding, remembering, and carrying out simple and routine tasks and could perform production rate or pace work such as on an assembly line.

6.    On October 16, 2018, plaintiff was incapable of performing any past relevant work.

7.    Johnson was born on September 18, 1973, and was 41 years old, which is defined as a younger individual aged 18–49, on May 5, 2015.

8.    Plaintiff had a limited education and was able to communicate in English.

9.    Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that the claimant was "not disabled," whether or not Johnson had transferable job skills.

10.    Considering plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Johnson could have performed.

11.    Johnson was not under a disability from May 5, 2015, the alleged disability onset date, through October 16, 2018, the date of the ALJ's decision.

(Tr. 306–19).

IV.    ANALYSIS

   A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363–64; Perez, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The Commissioner, rather than the courts, must resolve conflicts in the evidence. McCaskill v. Dep't of Health & Human Servs., 640 F. App'x 331, 332–33 (5th Cir. 2016) (citing Perez, 415 F.3d at 461); Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for period of disability and disability insurance benefits, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2016). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1]

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720–21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and

---

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

disability; and (4) the claimant's age, education, and work history.'" <u>Chrisner v. Astrue</u>,

249 F. App'x 354, 356 (5th Cir. 2007) (quoting <u>Wren v. Sullivan</u>, 925 F.2d 123, 126 (5th

Cir. 1991)); <u>accord</u> <u>Perez</u>, 415 F.3d at 463.

      B.    <u>Factual Background</u>

      1.    <u>June 27, 2018 Hearing</u>

Johnson testified that he was 44 years old and had completed the 11th grade, but did

not earn a General Education Diploma ("GED"). (Tr. 329–30). He stated that as of the date

of the hearing, he was not working and had not worked since May 5, 2015, his alleged

disability onset date. (Tr. 330). Plaintiff testified that when he tries to work, "he go[es] so

long and . . . get[s] dizzy." <u>Id</u>. Johnson clarified that when he is "sitting in the house . . .

[and] focus[es] . . . , [he] get[s] dizzy and . . . fall[s] out." <u>Id</u>.  He stated that he can "go

around 20 [to] 30 minutes" before experiencing these symptoms. (Tr. 330–31). Johnson

confirmed that these symptoms occur in longer or shorter periods of time depending on

whether the work he is doing is light or strenuous.  (Tr. 331).

Plaintiff testified that, along with these symptoms, he cannot work because of a

problem with his ribs, and when he "pick[s] up heavy stuff weigh[ing] over 40 [or around

50] pounds [his] ribs will start aching." (Tr. 331, 336). Johnson stated that he also has

"problem[s] with [his] left eye . . . [where] every now and then it'll start running and get

blurry [and] . . . stuck . . . ." <u>Id</u>. He testified that this happens between "one [to] 20 times

[in a day] . . . [and lasts] around a half an hour." (Tr. 331–32). He confirmed that he takes medicine for his eye condition.

As to his medical history, plaintiff confirmed that he was injured in a workplace accident when he was hit by a steel cable, which "fractured some facial bones, [caused him to sustain a] jaw fracture, rib fracture, pulmonary contusion . . . ." (Tr. 332). Johnson also stated that he has a problem hearing with his left ear, and that he walked with a cane until "it broke," and now has to "stop [walking] when [he] feel[s] himself get dizzy." (Tr. 332–33). He clarified that the cane was not prescribed by a doctor. Plaintiff confirmed that he had a "bout of Bell's palsy" that resolved, but testified that he thinks it has returned. Additionally, Johnson confirmed that he has "headaches [that he treats with] Excedrin or Aleve." (Tr. 333). Plaintiff explained that he has no problems standing, but stated that "the more [he] walk[s] the more [standing] affects [him]." (Tr. 335). He testified that he can only walk "about a half a block [before he has to stop walking]." (Tr. 335–36). Plaintiff stated that he is able to climb only "a few" stairs. (Tr. 336). Johnson testified that he is not on any prescribed pain medication. Id.

Plaintiff testified that about two years earlier he had complained of feeling depressed and having difficulty sleeping, but that the doctor prescribed him medication that helps him sleep. (Tr. 336–37). Johnson stated that "quite a few years" previously, he received mental health care, but is no longer doing so. (Tr. 337). He confirmed that he has not been prescribed any medication for depression. Id. Plaintiff testified that he has problems with

8

his concentration and memory, which "comes and goes every once in a blue moon." (Tr. 337). For example, he stated that he will "set his keys down, [and then] forget where [he] put them . . . sometimes." (Tr. 337). When the ALJ noted that this phenomenon happens to everyone, Johnson stated that it "happen[s] to [him] more than [a] majority of time." Id. He confirmed that he never forgets where he lives while driving or people's names. Id. Plaintiff testified that he has problems with his depth perception and focusing on objects, but while has been prescribed glasses, he does not have any because he "couldn't find a prescription." (Tr. 337–38). He said that he has reading glasses with which he "can focus, [but] can't see long distance." (Tr. 338).

Plaintiff testified that he lives with his wife, who works outside of the home. (Tr. 333). He stated that he is able to go to the bathroom and get dressed by himself, does not know how to cook, but is capable of doing his own laundry and is able to drive. (Tr. 334). Plaintiff explained that he also takes the trash out every day and "maybe sweep[s]." Id. While he testified that he never goes grocery shopping, either alone or with his wife, he helps her bring the grocery bags inside when she returns from the grocery store. (Tr. 335).

When questioned by his attorney, Johnson stated that he is still having "problems with [his] neck," including "sharp pain. . . [l]ike shooting pain on [his] right side." (Tr. 338). He testified that the pain in his neck is brought on by "turning it, maybe heat," and that he felt some pain at the time of the hearing. Id. Plaintiff stated that he experiences this pain every day, and he also has a headache "close to [all] day every day." (Tr. 338–39). He

9

confirmed that taking Excedrin helps his headaches. As to his memory, plaintiff testified that "[o]ne time [he] forgot where [his] brother live[d], [and he] forgot [saying] something to somebody. . . . . A couple [of] weeks ago [he saw] somebody just taking a rack off [of] a truck . . . [but he doesn't] remember saying anything." (Tr. 339).

Plaintiff stated that he visits his brother a lot and "tried working with him . . . he's got a demolition truck . . . [and he] tried to help [his brother] out." Id. When asked by the ALJ what work he was doing with his brother, Johnson explained that he would "level [the demolition truck] and put the trash in the truck . . . moving the big boulder around with them." (Tr. 340). Plaintiff said that "[i]n 30 minutes [he] passed out . . . [even though it was] cool . . . [and] raining." Id. He explained that he got dizzy, which he attributed to "walking [a] far distance or [for] a long . . . time. . . [or] something to do with the motion." Id.. Johnson testified that he thinks that moving his head can make him feel dizzy. Id. Plaintiff said that sometimes he goes out and watches his brother work, but since that day, his brother does not let him drive the truck because he doesn't "want to be sued." (Tr. 341). He confirmed that he was not paid for that day. Johnson testified that he had a problem for several months with one or both of his legs giving out. (Tr. 340–41). He also confirmed that he has a problem concentrating on things during the day. (Tr. 341).

When the ALJ asked whether plaintiff's doctors had put any physical restrictions on him, plaintiff testified that his rehabilitation therapists instructed him to "take [his] time walking, [not to] move [himself] so fast." (Tr. 341–42). He stated that the therapists told

him to walk "20, 30 [minutes] every day of the week." (Tr. 342). Plaintiff testified that his treating doctors had not put any physical restrictions on him. Id.

C.    Vocational Expert Testimony

Thomas Meunier, a vocational expert, testified at the hearing. (Tr. 342). The vocational expert testified that plaintiff had worked as (1) a lawn service worker, which is classified as Dictionary of Occupational Titles ("DOT") number 406.687-010, medium in exertion, unskilled work, with a Department of Labor Specific Vocational Preparation ("SVP") rating of 2; (2) a construction foreman, which is classified as DOT number 899.133-010, medium in exertion, unskilled work, with an SVP rating of 7; (3) a janitor, which is classified as DOT number 381.687-018, medium in exertion, unskilled work, with an SVP rating of 2; (4) a shipping clerk, which is classified as DOT number 222.387-050, medium in exertion, skilled work, with an SVP rating of 5; (5) a stock supervisor, which is classified as DOT number 222.137-034, light in exertion, skilled work, with an SVP rating of 6. (Tr. 343).

The ALJ then posed a hypothetical, assuming an individual with the same vocational factors as plaintiff, including the same age, education and past work experience; with the residual functional capacity for light work; with no climbing ladders, ropes or scaffolds, frequent balancing, occasional climbing of ramps and stairs, occasional stooping, kneeling, crouching or crawling. (Tr. 343). The hypothetical individual would need to avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights,

and, due to his memory and concentration problems, would be limited to understanding, remembering and carrying out only simple and routine tasks. Id. The vocational expert testified that the hypothetical individual could not perform plaintiff's past work. (Tr. 343).

The vocational expert testified, however, that the hypothetical individual could perform several other available positions, including: (1) a housekeeper/cleaner, with a DOT number of 323.687-014, SVP of 2, classified as unskilled, light work, with 446,852 national positions; (2) janitor, with a DOT number of 381.687-030, SVP of 2, classified as unskilled, light work, with 170,766 national positions; and (3) a merchandise marker, with a DOT number of 209.587-034, SVP of 2, classified as unskilled, light work, with 251,458 national positions. (Tr. 344). The vocational expert confirmed that his responses were consistent with the Dictionary of Occupational Titles and his experience. Id. When asked by plaintiff's attorney where the vocational expert obtained the data on the number of available jobs, the vocational expert testified that the data was drawn from "U.S. Publishing [a private company that publishes the numbers], based upon the Bureau of Labor Statistics data." Id. The vocational expert stated that the Dictionary of Occupational Titles job descriptions differ from those in U.S. Publishing, which do not provide job descriptions but only DOT numbers. (Tr. 344–45). He testified that the descriptions are based on the Bureau of Labor Statistics and the Selective Characteristics of Occupations. (Tr. 345).

The ALJ then modified the hypothetical to add that the hypothetical individual could not perform production rate or pace work, as would be required to work on an assembly line. (Tr. 145). The vocational expert confirmed that this modification to the original hypothetical would not change his testimony about the available jobs that the hypothetical individual could perform. Id.

D.    Medical Evidence

I have reviewed the medical evidence and the ALJ's summary of the evidence in his decision. (Tr. 311–17). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    The New Evidence Submitted to the Appeals Council Does Not Warrant Remand.

Plaintiff argues that the Appeals Council erred by failing to consider new evidence dated after the ALJ's decision, which Johnson submitted to the Appeals Council and is included in the administrative record. (Tr. 8–305). The records consist of (1) 58 pages of medical records from Ochsner Kenner Medical Center, dated October 29, 2018 to November 28, 2018; (2) 240 pages of medical records from Ochsner Main Campus, dated October 29, 2018 to November 28, 2018. Id. at pp. 8–305. The records contain treatment notes following a stroke Johnson suffered between October 28 and 29, 2018. Id. Johnson argues that this new evidence justifies remand to the administrative level.

In denying plaintiff's request for review, the Appeals Council stated that the new evidence "does not affect the decision about whether [he was] disabled beginning on or before October 16, 2018," the date of the ALJ's decision, because the evidence "does not relate to the period at issue." (Tr. 2). Johnson contends that the new medical records relate to the relevant time period and would likely change the outcome of the ALJ's decision if they were properly evaluated. He asks the court to remand his case to the Commissioner for that purpose. Based on my review of the record, I find that remand is not mandated for the following reasons.

As an initial matter, it is well established that the Appeals Council is not required to discuss new evidence when it denies review, as opposed to reviewing the case and rendering a new decision affirming the ALJ's findings.

> When a claimant requests that the AC [Appeals Council] review an ALJ's decision, the AC "may deny a party's request for review <u>or</u> it may decide to review a case and make a decision." 20 C.F.R. § 404.981 (emphasis added). "When the Appeals Council makes a decision," . . . "it will follow the same rules for considering opinion evidence as [ALJs] follow." 20 C.F.R. § 404.1527; <u>see also</u> <u>Meyer v. Astrue</u>, 662 F.3d 700, 706 (4th Cir. 2011) ("Only if the Appeals Council <u>grants</u> a request for review and issues its own decision on the merits is the Appeals Council required to make findings of fact and explain its reasoning."). The AC's decision then becomes binding unless the claimant seeks judicial review. 20 C.F.R. § 404.981. On the other hand, when the AC denies the claimant's request for review, as it did in this case, that denial becomes part of the Commissioner's final decision, <u>Higginbotham [v. Barnhart</u>, 405 F.3d 332 (5th Cir. 2005)], 405 F.3d at 336-37, but the ALJ's decision remains binding, 20 C.F.R. § 404.981.

<u>Sun v. Colvin</u>, 793 F.3d 502, 511 (5th Cir. 2015).

14

> When confronted with new <u>and</u> material evidence, the Appeals Council
> "<u>shall evaluate</u> the entire record including the new and material evidence. . . .
> It will then <u>review the case if it finds that the administrative law judge's</u>
> <u>action, findings, or conclusion is (sic) contrary to the weight of the evidence</u>
> currently of record."  However, the regulations <u>do not require the Appeals</u>
> <u>Council to discuss the newly submitted evidence, nor is the Appeals Council</u>
> <u>required to give reasons for denying review</u>.

<u>Whitehead v. Colvin</u>, 820 F.3d 776, 780 (5th Cir. 2016) (quoting 20 C.F.R. § 404.970(b))

(citing <u>Sun</u>, 793 F.3d at 511) (emphasis added) (ellipses in original).  "Thus, it was not

error for the Appeals Council to omit a discussion of the additional treatment records

submitted by" Johnson when it denied review in the instant case.  <u>Id.</u>

Additionally, <u>Higginbotham v. Barnhart</u>, 405 F.3d 332 (5th Cir. 2005)

("<u>Higginbotham I</u>"), does not require this court to remand simply because the Appeals

Council, in denying review, did not discuss the new evidence.  <u>Higginbotham I</u> did <u>not</u> hold

that the Appeals Council had failed properly to consider and evaluate treating source

opinions dated after the ALJ's decision or that such evidence must be filed in the record.

Rather, the Fifth Circuit held that the <u>district court</u> had erred in failing to review the post-

dated evidence that plaintiff had submitted to the Appeals Council, which the Appeals

Council had "considered" when it denied plaintiff's request for review, but which the

Appeals Council found provided no basis to reverse the ALJ's decision.  <u>Id.</u> at 334, 337.

The Fifth Circuit held in <u>Higginbotham I</u> that the <u>court</u> must examine the later-

submitted evidence when plaintiff argues that the Appeals Council erred by denying her

request for review despite the evidence.  "If additional evidence is presented while the case

is pending review by the Appeals Council, courts of appeals customarily review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." Higginbotham v. Barnhart ("Higginbotham II"), 163 F. App'x 279, 282 (5th Cir. 2006) (citing Higginbotham I, 405 F.3d at 337-38) (additional citations omitted).  The "after-submitted evidence considered by the Appeals Council constitutes part of the record upon which the final decision on eligibility is based, and . . . all record evidence, irrespective of its submission date, is subject to district court review" under the substantial evidence standard.  Beck v. Barnhart, 205 F. App'x 207, 214 (5th Cir. 2006) (citing Higginbotham I, 405 F.3d at 337) (emphasis added).

Following Higginbotham I and II, district courts in the Fifth Circuit have held that they should review the entire record, including the evidence submitted to the Appeals Council, to determine whether "the Appeals Council has failed to properly evaluate new medical evidence which is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination" and requires that the case "be remanded so that the Appeals Council fully can evaluate the treating source statement." Booker v. Astrue, 2011 WL 4031096, at *7 (N.D. Tex. Aug. 15, 2011), report & recommendation adopted, 2011 WL 4048408 (N.D. Tex. Sep. 12, 2011) (citations omitted) (emphasis added); accord Thornton v. Colvin, 2016 WL 1136627, at *13 (E.D. La. Feb. 29, 2016), report & recommendation adopted, 2016 WL 1110231 (E.D. La. Mar. 22, 2016); Sigala v. Colvin,

16

2015 WL 5472861, at *5 (N.D. Tex. July 28, 2015), <u>report & recommendation adopted</u>, 2015 WL 5472894 (N.D. Tex. Sept. 17, 2015); <u>see also</u> <u>Jones</u>, 228 F. App'x at 407 (The evidence submitted to the Appeals Council "<u>did not so contradict earlier evidence</u> that a 'weighing' of new and old evidence would be required." Remand was unnecessary when the new "report was . . . <u>not inconsistent</u> with" the evidence that the ALJ considered.) (emphasis added). In accordance with <u>Higginbotham I</u> and <u>II</u>, I have reviewed the subject medical records and find that they do not significantly undermine the ALJ's findings, which are still supported by substantial evidence, because the new evidence is not material and there is no reasonable possibility that it would change the outcome.

"The Appeals Council is permitted to consider additional evidence only if it is new, material, <u>and</u> related to the period on or before the ALJ's hearing decision." <u>Martinez v. Astrue</u>, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 20 C.F.R. §§ 404.970(b), 404.976(B)) (emphasis added). This court may not issue factual findings on new medical evidence and may review such evidence only to determine if remand to the Commissioner is appropriate. <u>Id.</u>

"Evidence that was 'not in existence at the time of the administrative . . . proceedings, meets the "new" requirement for remand . . . .'" <u>Hunter v. Astrue</u>, 283 F. App'x 261, 262 (5th Cir. 2008) (quoting <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir.1989)); <u>accord</u> <u>Johnson v. Soc. Sec. Admin.</u>, 631 F. App'x 260, 262–63 (5th Cir. 2016) (citations omitted). However, "[e]vidence which is <u>merely cumulative</u> of that already in

the administrative record <u>is not 'new' evidence</u> that would support a remand under §

405(g)." <u>Wilson v. Astrue</u>, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing

<u>Pierre v. Sullivan</u>, 884 F.2d 799, 803 (5th Cir. 1989); <u>Bradley v. Bowen</u>, 809 F.2d 1054,

1058 (5th Cir. 1987)) (emphasis added); <u>accord</u> <u>Ferrari v. Astrue</u>, 435 F. App'x 314,

314–15 (5th Cir. 2010); <u>Haynes v. Astrue</u>, 2012 WL 3860467, at *3 (E.D. La. July 23,

2012), <u>report & recommendation adopted</u>, 2012 WL 3863171 (E.D. La. Sept. 5, 2012),

<u>aff'd</u>, 519 F. App'x 258 (5th Cir. 2013).

New evidence must also be material to be the basis for a remand.  The "materiality

inquiry requires determining whether the evidence relates to the time period for which the

disability benefits were denied." <u>Castillo v. Barnhart</u>, 325 F.3d 550, 551–52 (5th Cir. 2003)

(citing <u>Ripley</u>, 67 F.3d at 555); <u>accord</u> <u>Joubert v. Astrue</u>, 287 F. App'x 380, 383 (5th Cir.

2008).  The new evidence cannot merely concern a subsequently acquired disability or the

deterioration of a condition that was not previously disabling. <u>Id.</u>; <u>Garson v. Barnhart</u>, 162

F. App'x 301, 303 (5th Cir. 2006) (citing <u>Leggett v. Chater</u>, 67 F.3d 558, 567 (5th

Cir. 1995)).

Further, "[f]or new evidence to be material, there must exist the reasonable

possibility that it would have changed the outcome of the Secretary's determination."

<u>Hunter</u>, 283 F. App'x at 262 (quotations omitted) (citing <u>Latham v. Shalala</u>, 36 F.3d 482,

483 (5th Cir. 1994)); <u>accord</u> <u>Jones</u>, 228 F. App'x at 406 (citing 28 U.S.C. § 405(g)).[2]

---

[2]The revised regulations now provide a stricter standard for new evidence.  The Appeals Council
will review a case if it "receives additional evidence that is new, <u>material</u>, and relates to the period on

Johnson has not shown that the records post-dating the ALJ's opinion are material, as defined by the Fifth Circuit. First, the relevant time period to establish disability is from plaintiff's alleged onset date of May 5, 2015 through October 16, 2018, the date of the ALJ's decision. The newly submitted records are dated October 29, 2018 through November 28, 2018, and concern a stroke that plaintiff suffered between October 28 and 29, 2018, twelve (12) to thirteen (13) days <u>after</u> the ALJ's decision. Because none of the new medical records relate to the period for which benefits were denied, they are immaterial. <u>Hernandez v. Astrue</u>, 278 F. App'x 333, 338 (5th Cir. 2008) (citing 20 C.F.R. § 404.1502); <u>Sanchez v. Barnhart</u>, 75 F. App'x 268, 270 (5th Cir. 2003) (citing <u>Shave v. Apfel</u>, 238 F.3d 592, 597 (5th Cir. 2001)).

Second, Johnson has failed to demonstrate a reasonable possibility that the new evidence would change the outcome. The parties in their respective memoranda cite, but do not discuss, different standards for this argument. Citing <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995), Johnson argues that his new evidence creates a "reasonable <u>probability</u>" of a different outcome. Record Doc. No. 9 at pp. 3–4 (emphasis added). Some Fifth Circuit opinions following <u>Ripley</u> have stated that the materiality requirement for consideration of new evidence requires a "reasonable probability" that the evidence

---

or before the date of the hearing decision, <u>and</u> there is a reasonable <u>probability</u> that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (2017) (emphasis added). Because "material" is defined by the Fifth Circuit to include a reasonable <u>possibility</u> of a changed outcome, it remains to be seen how, or whether, the new regulations will affect that definition.

would change the outcome.  Castillo v. Barnhart, 325 F.3d 550, 551–52 (5th Cir. 2003);

Joubert v. Astrue, 287 F. App'x 380, 383 (5th Cir. 2008).  However, before Ripley was

decided, the Fifth Circuit's standard was whether a "reasonable possibility" exists of a

different outcome.  Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994) (citations

omitted) (emphasis added).  The Ripley panel substituted the term "probability" when it

paraphrased, rather than quoted, Latham.  The Commissioner in the instant case cites the

"reasonable possibility" standard in his memorandum. Record Doc. No. 12 at p. 4.

Neither Latham nor the earlier decisions on which it relied have been overruled by a

statutory amendment, the Supreme Court or the Fifth Circuit en banc.  A Fifth Circuit

panel may not overturn another panel's decision and, "to the extent that a more recent

case contradicts an older case, the newer language has no effect."  Davis v. Fort Bend

Cty., 893 F.3d 300, 305 (5th Cir. 2018) (citations and quotation omitted). The "reasonable

possibility" standard, which places a lower burden on plaintiff,[3] is binding on this court,

and I apply it in this case.[4]

---

[3]Something that is "probable" is more likely than not to happen.  Something that is "possible" may happen, but its likelihood is more uncertain.  Dictionary.com (Random House Unabridged Dictionary, Random House, Inc. 2018), http://www.dictionary.reference.com/browse/probability; id., http://www.dictionary.reference.com/browse/probable; id. http://www.dictionary.com/browse/possible (last visited July 15, 2018).

[4]Under recently revised regulations, the Appeals Council will not consider new and material evidence unless a claimant meets the reasonable probability standard and shows good cause for not having submitted the evidence to the ALJ.  Although the new rule was "effective on January 17, 2017 . . . , compliance [was] not required until May 1, 2017."  Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987-01 (July 1, 2016) (effective Jan. 17, 2017) (codified at 20 C.F.R. § 404.970(a)(5), (b)).  Before the revision, the Fifth Circuit had "not yet considered [whether good cause is required for new evidence submitted to the

The ALJ found that Johnson has severe impairments of traumatic brain injury, vertigo and neurocognitive disorder, but that the record did not support plaintiff's allegations of extreme functional limitations that would prevent him from performing light work with the restrictions in the ALJ's opinion. Johnson argues that the new evidence of his stroke corroborates his complaints of dizziness and high blood pressure before the ALJ's decision and a November 2015 MRI that showed a possibility of hypertensive vasculopathy.[5] Record Doc. No. 9 at p. 4 (citing Tr. 748). However, plaintiff has not persuasively shown that the new medical records demonstrate more than a later-acquired disability or the subsequent deterioration of a previously non-disabling condition. Castillo, 325 F.3d at 551–52;  Garson, 162 F. App'x at 303. As noted by defendant, if Johnson believes this new evidence concerning a stroke after the ALJ's decision demonstrates a later-acquired disability or a subsequent deterioration of a previously non-disabling condition, "he is free to reapply for disability benefits on the basis of this new evidence," Record Doc. No. 12 at p. 4 (citing Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985), with the date of his stroke as the disability onset date. Johnson does not explain how the medical records following his stroke demonstrate a reasonable possibility that the result

Appeals Council], and the remaining Circuit courts are split."  Lee v. Colvin, No. 4:14-CV-418-CAN, 2016 WL 310282, at *6 & n.6 (E.D. Tex. Jan. 26, 2016) (citing Masterson v. Barnhart, 309 F.3d 267, 274 n.3 (5th Cir. 2002); Rodriguez v. Barnhart, 252 F. Supp. 2d 329, 332 (N.D. Tex. 2003)) (citations to cases from other circuits omitted). Velasquez submitted his new evidence to the Appeals Council on January 24, 2017, during the compliance grace period.  As the Commissioner does in her memorandum, I apply the reasonable possibility standard without any requirement of good cause.

[5] Hypertensive is "characterized by increased tension or pressure," Dorland's Illustrated Medical Dictionary 858 (29th ed. 2000), while vasculopathy is "any disorder of the blood vessels." Id. at p. 1935.

would change if the ALJ considered these records. Thus, he has not shown that the new evidence he submitted to the Appeals Council after the ALJ's decision is material. Accordingly, this assignment of error lacks merit and does not warrant remand.

2.    The ALJ properly did not consider a closed period of disability in his decision.

Citing Social Security Ruling ("SSR") 82-52,[6] Johnson contends that an ALJ must determine whether a medically determinable impairment can be expected to last for a continuous period of at least twelve months and must present "a specific rationale if he finds that there is a disability [of in]sufficient duration." Record Doc. No. 9 at p. 5. Johnson argues that the ALJ did not present the required rationale and that "[s]ubstantial evidence in the record . . . support[s] a finding of a closed period of disability from at least May 5, 2015 through February 13, 2017." Id. at p. 7. This argument fails for two reasons.

First, the Commissioner may award benefits for a closed period when the claimant experiences medical improvement in a previously disabling condition, so that he is now able to engage in substantial gainful activity. Teague v. Astrue, 342 F. App'x 962, 963–64 (5th Cir. 2009) (citing 42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594(b)(3); Waters v. Barnhart, 276 F.3d 716, 717, 719 (5th Cir. 2002)).  The requirement of SSR 82-52 that

---

[6] Although the Commissioner's rulings "are not binding on this court, we have consulted them 'when the statute at issue provides little guidance.'"  Bryant v. Astrue, 272 F. App'x 352, 356 (5th Cir. 2008) (quoting Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001)); accord Ramirez v. Colvin, 606 F. App'x 775, 778 (5th Cir. 2015).

the ALJ present a specific rationale for denying a closed period of disability applies only to "cases <u>denied on the basis of insufficient duration</u>" of the claimant's inability to engage in substantial gainful activity.  SSR 82-52, 1982 WL 31376, at *1, *3 (1989) (emphasis added). "In considering 'duration,' it is the inability to engage in [substantial gainful employment] because of the impairment that must last the required 12-month period." <u>Frisby v. Comm'r of Soc. Sec.</u>, 2015 WL 1859053, at *5 (W.D. La. Apr. 22, 2015), <u>aff'd</u>, 632 F. App'x 226 (5th Cir. 2016) (citing <u>Barnhart v. Walton</u>, 535 U.S. 212, 217–22 (2002) "(the inability to work, not just the impairment upon which it is based, must last 12 months)"); SSR 82-52).  The ALJ did <u>not</u> deny Johnson's claim based on <u>insufficient duration</u> of his inability to engage in substantial gainful employment, but on the basis that, at all times during the relevant period, plaintiff had the residual functional capacity to perform work that was available in significant numbers.  The ALJ was not required to discuss his rationale for not awarding a closed period of disability when he found that no such disability existed.

Second, Johnson does not explain why he contends that his alleged closed period of disability ended on February 13, 2017. The only significance of the date in the record is that plaintiff underwent (1) a Social Security Consultative Exam at Internal Medical Associates of New Orleans, L.L.C. by Dr. Harvey L. Malone, M.D., at which time plaintiff complained of "left rib area pain occasionally, headaches, dizziness and occasional jaw pain . . . [and decreased hearing in the left ear]," reported using a cane

23

when walking and that pain medication relieved his headaches; and (2) a neuropsychological evaluation by Dr. Randee L. Booksh, Ph.D., during which plaintiff was found to possess a full-scale intelligence quotient of 62, mild traumatic brain injury, deficits in attention, concentration, executive functioning, perceptual functioning, psychomotor speed and coordination, category fluency and memory functioning. (Tr. 1499–1500, 1504–1520). Oddly, plaintiff states that "[a]t the time [Johnson] was seen by Dr. Booksh on February 13, 2017 and the Social Security examiner on that same date, he was still exhibiting symptoms from his traumatic brain injury including dizziness, headaches, vertigo and decreased cognitive functioning including memory loss." Record Doc. No. 9 at p. 7. Plaintiff does not explain why his closed period of disability should have ended on February 13, 2017, when he continued to experience allegedly disabling symptoms on that date. In a similar case, the Fifth Circuit recently disagreed with a plaintiff who argued primarily that the ALJ erred by failing to find that she had an open-ended disability and alternatively that the ALJ erred by failing to consider a closed period of disability.

> [Plaintiff] posits that even though her May 2011 visit to a physician "document[ed] improvement" in her condition, the ALJ should have considered whether Hurst was disabled for some twelve-month period ending before that time. We disagree. The ALJ considered the entire medical record, including evidence relating to visits within the twelve months following the asserted onset of disability, in reaching her conclusion.

Hurst v. Colvin, 639 F. App'x 1018, 1023 (5th Cir. 2016) (emphasis added);.

24

The same is true in the instant case.  The ALJ thoroughly considered, weighed and resolved conflicts in the record evidence, and substantial evidence supported his conclusions.  Plaintiff fails to identify substantial evidence that he was disabled by his severe impairments from working for any period of 12 continuous months. See Kelly v. Astrue, 2011 WL 3563197, at *10 (E.D. La. Jun. 27, 2011) (citing Barnhart v. Walton, 535 U.S. 212, 219–20 (2002)).

Accordingly, this assignment of error lacks merit.

## CONCLUSION

The Appeals Council did not err in denying review despite the new medical records plaintiff submitted dated after the ALJ's decision. The ALJ used the appropriate legal standards to weigh and resolve conflicts in the evidence. His findings are all supported by substantial evidence.

## **RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's appeal be denied and his complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[7]

New Orleans, Louisiana, this __3rd__ day of March, 2020.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[7] <u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen (14) days.

26